# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

RUSS SALTON,

       Plaintiff,

vs.

TROY POLYOCK,

       Defendant.

No. C10-4113-MWB

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO REMAND**

_____

The defendant in this lawsuit, which was originally filed in state court, removed the action to federal court on the ground of diversity jurisdiction. The plaintiff, however, has moved to remand the action to state court, asserting that his complaint fails to meet the jurisdictional minimum amount in controversy for federal diversity jurisdiction. Therefore, this court must determine whether plaintiff's assertion, that his complaint does not meet the jurisdictional minimum amount in controversy for federal diversity jurisdiction to attach, requires remanding this case to state court.

## *I. INTRODUCTION AND BACKGROUND*

On October 11, 2010, plaintiff Russ Salton filed a petition in the Iowa District Court for Crawford County against defendant Troy Polyock. This lawsuit arises from two alleged contracts entered into between Salton and Polyock. In the first contract, an oral agreement between Salton and Polyock in 2007, Salton alleges that he agreed to permit Polyock to "flush" his prize Maine-Anjou cow, Miss Kadabra, twice in return for one-half

of the proceeds of the sale of calves born as a result of these flushings.[1] Miss Kadabra had an appraised value of $150,000. It is further alleged that, as a result of the manner in which the flushings were performed, Miss Kadabra was injured, eliminating her ability to naturally conceive a calf and reducing her value. The second alleged contract concerned a male offspring of these flushings, Highliner. It is alleged that Salton and Polyock agreed that each would own one-half interest in Highliner and that Polyock would harvest, store, and sell semen from Highliner with the gross proceeds of such sales to be divided equally between Salton and Polyock. Salton alleges that Polyock flushed Miss Kadabra more than twice and has not delivered one-half of the proceeds from the sale of all calves resulting from the flushings of Miss Kadabra. Salton further alleges that Polyock has not delivered one-half of the proceeds of the sale of Highliner's semen.

In Count I of the Petition, Salton alleges that Polyock breached their contract concerning the flushing of Miss Kadabra and Salton has suffered damages. Similarly, in Count II, Salton alleges that Polyock breached their contract concerning Highliner and Salton has suffered damages. In Count III, Salton alleges a claim for conversion arising out of the sale of Miss Kadabra's embryos.[2]

---

[1] According to Salton's Petition, "flushing" is

> a procedure in the cattle industry involving the collection and storage of fertilized embryos from genetically superior heifers and cows. The fertilized embryos are then transplanted into recipient cows with the expectation that genetically superior calves will result. The process is designed to increase the number of calves a genetically superior cow can produce during it's life.

Petition at ¶ 6.

[2] The court notes that Salton was prevented from stating a specific amount of
(continued…)

On November 18, 2010, Polyock removed this action to this federal court on the ground of diversity of citizenship, pursuant to 28 U.S.C. § 1441(a). In his notice of removal, Polyock asserts that, based on the allegations in the petition, the amount in controversy "exceeds $75,000.00." Notice of Removal at ¶ 9. Accordingly, Polyock alleges in his notice of removal that the amount in controversy exceeds the jurisdictional requirement established in 28 U.S.C. § 1332.

On December 14, 2010, Salton filed his Resistance to Notice of Removal and Motion To Remand (docket no. 5) in which he seeks a remand of this case to state court, asserting an insufficient amount in controversy. In his motion to remand, Salton contends that Polyock's reliance on Miss Kadabra's appraised pre-contract value of $150,000 is misplaced because he is not seeking "to rescind the contract and be awarded a pre-contract measure of damages for Miss Kadabra's full value." Plaintiff's Mot. to Remand at ¶ 3. Thus, Salton seeks to have this case remanded to state court for lack of federal subject matter jurisdiction, owing to an insufficient amount in controversy. Polyock did not file a timely a response to Salton's motion. The court could, therefore, have granted Salton's motion pursuant to N.D. IOWA LR 7(f), which provides that "[i]f no timely resistance to a motion is filed, the motion may be granted without prior notice." Instead, in the interests of justice, the court, *sua sponte*, granted Polyock until February 2, 2011, to file his response to Salton's motion. To date, Polyock has filed no response to Salton's motion.

---

²(…continued)
monetary damages in his petition filed in Iowa district court by Iowa Rule of Civil Procedure 1.403.

3

## II. LEGAL ANALYSIS

### A. *Standards And Procedures Of Removal Jurisdiction*

In *McCorkindale v. American Home Assur. Co./A.I.C.*, 909 F. Supp. 646 (N.D. Iowa 1995), this court summarized the principles applicable to a motion to remand as follows: (1) the party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction; (2) a fundamental principle of removal jurisdiction is that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed; (3) lack of subject matter jurisdiction requires remand to the state court under the terms of 28 U.S.C. § 1447(c); (4) the court's removal jurisdiction must be strictly construed; therefore, (5) the district court is required to resolve all doubts about federal jurisdiction in favor of remand; and, finally, (6) in general, remand orders issued under 28 U.S.C. § 1447(c) are not reviewable by appeal or writ of mandamus. *McCorkindale*, 909 F. Supp. at 650.

In *McCorkindale*, in addition to the general principles articulated above, this court considered the proper standards for determining the amount in controversy when a state court rule—such as Rule 1.403 of the Iowa Rules of Civil Procedure—prohibits the pleading of a specific amount in controversy: Instead of the "legal certainty" test,[3] the

---

[3] The "legal certainty" test states that, when an amount in excess of the jurisdictional amount was originally pleaded,

> if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

(continued…)

4

defendant is required to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *McCorkindale*, 909 F. Supp. at 651-53; *see Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) (noting that "[w]here the defendant seeks to invoke federal jurisdiction through removal, however, it bears the burden of proving that the jurisdictional threshold is satisfied."); *see also James Neff Kramper Family Farm P'ship*, 393 F.3d 828, 831 (8th Cir. 2005) (noting that the rule that the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence "applies even in removed cases where the party invoking jurisdiction is the defendant."); *Onepoint Solutions, L.L.C. v. Borchert*, 486 F.3d 342, 349 (8th Cir. 2007) (noting that the party invoking jurisdiction "has the burden of proving the requisite amount by a preponderance of the evidence."). This court also outlined the process for determining the amount in controversy in such cases: First, the court must determine whether the complaint is removable on its face; and second, if the complaint is not removable on its face, the court must provide the parties with the opportunity to satisfy the court as to the amount in controversy. *McCorkindale*, 909 F. Supp. at 653-55.

### B. Application Of Standards and Procedures

Turning to the first part of the applicable analysis, the court finds that the face of the complaint in question here provides little, if any, insight into the amount in controversy. *Accord McCorkindale*, 909 F. Supp. at 655 (because Iowa law forbade pleading any amount in controversy, except an amount in excess of the jurisdictional amount in state court, "the allegations of actual damages on the face of the complaint

---

[3](…continued)

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

provide the court with no basis for determining the amount of actual damages in question"). Therefore, the court finds that the complaint is not removable on its face, and the court must take recourse to the second prong of the analysis, providing the parties with the opportunity to satisfy the court as to the amount in controversy. *Id*. Here, Polyock has already been granted an extension of time during which he was free to provide the court with supplemental materials concerning the amount in controversy. Polyock, however, has not filed any resistance whatsoever to Salton's Motion to Remand.

In *Halsne v. Liberty Mutual Group*, 40 F. Supp.2d 1087 (N.D. Iowa 1999), this court found that where a plaintiff's state court complaint does not specify a specific amount of damages, post removal stipulations indicating that the value of the claim at the time of removal did not exceed the jurisdictional minimum were permissible. In *Halsne*, this court stated,

> [c]onsideration of such a "clarifying" stipulation is in accord with the fundamental principle of removal jurisdiction that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed, as well as the further principles that the court's removal jurisdiction must be strictly construed, and that the court is required to resolve all doubts about federal jurisdiction in favor of remand. *McCorkindale*, 909 F. Supp. at 650. As such, it is not only permissible for the court to consider the stipulation, but for the court to find on the basis of the stipulation that removal never attached, because this court never had subject matter jurisdiction owing to lack of sufficient amount in controversy.

*Id*. at 1092. Salton, however, has not filed such a stipulation in this case. Indeed, Salton have not indicated the precise amount he is seeking for monetary damages in this case. This is understandable, however, given that Salton is requesting in this lawsuit an accounting of the sale of Highliner's semen and the calves born from Miss Kadabra's

flushings. The sales records for such sales would presumably be in Polyock's possession and control. Yet, Polyock did not reference them in his Notice of Removal and has not even resisted Salton's Motion to Remand. The court finds that Polyock has failed to meet his burden of proving, by a preponderance of the evidence, that the matter in controversy exceeds the sum or value of $75,000. *See Bell,* 557 F.3d at 956; *see also Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) ("All doubts about federal jurisdiction should be resolved in favor of remand to state court."). Therefore, the court finds that it does not have subject matter jurisdiction, lacking to a sufficient amount in controversy. Consequently, this case was improvidently removed and Salton's Motion to Remand is granted.

### III. CONCLUSION

The court concludes that Polyock has not established that, at the time of removal, that the amount in controversy exceeds $75,000. Therefore, the court holds that it does not have subject matter jurisdiction, owing to an insufficient amount in controversy. Consequently, this case was improvidently removed, *see* 28 U.S.C. § 1447(c), and Salton's Motion To Remand is **granted**. This case is remanded to the Iowa District Court for Crawford County.

**IT IS SO ORDERED.**

**DATED** this 10th day of February, 2011.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA